EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| María Mercedes Rodríguez Negrón<br><br>Peticionaria<br><br>v.<br><br>Estado Libre Asociado de Puerto Rico y otros<br><br>Recurridos | Certiorari<br><br>2026 TSPR 84<br><br>218 DPR ___ |
|---|---|

Número del Caso:  CC-2025-0453


Fecha:  4 de agosto de 2026


Tribunal de Apelaciones:

>     Panel III


Representante legal de la parte peticionaria:

>     Lcdo. Gaspar Martínez Mangual


Representante legal de la parte recurrida:

>     Lcda. Priscila Luna Rivera


Oficina del Procurador General:

>     Hon. Omar Andino Figueroa
>     Procurador General
>
>     Lcdo. Frank A. Rosado Méndez
>     Subprocurador General
>
>     Lcda. Mariela Reyes Huertas
>     Procuradora General Auxiliar


Materia: Ley Núm. 143-2019 – Inmunidad de los municipios por reclamaciones en daños y perjuicios por accidentes que ocurran en carreteras o aceras estatales que transcurren dentro de sus límites territoriales, siempre y cuando la entidad pública no adquiera un seguro de responsabilidad que se extienda a cubrir ese riesgo.


Este documento está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal Supremo. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| María Mercedes Rodríguez Negrón<br><br>Peticionaria<br><br>v.<br><br>Estado Libre Asociado de Puerto Rico y otros<br><br>Recurridos | CC-2025-0453 | |

Opinión del Tribunal emitida por la Jueza Asociada señora Pabón Charneco.

En San Juan, Puerto Rico, a 4 de agosto de 2026.

En *González Meléndez v. Mun. San Juan et al.*, 212 DPR 601 (2023), determinamos que a partir de la aprobación de la Ley Núm. 143-2019, *infra*, los municipios gozan de inmunidad por reclamaciones en daños y perjuicios por accidentes que ocurran en carreteras o aceras estatales que transcurren dentro de sus límites territoriales. Hoy adjudicamos que, siempre y cuando la entidad pública no adquiera un seguro de responsabilidad que se extienda a cubrir ese riesgo, reflejando así una renuncia a su inmunidad, su aseguradora tampoco responderá en una acción directa.

I

El 18 de enero de 2024, la Sra. María Mercedes Rodríguez Negrón (señora Rodríguez Negrón o peticionaria)

presentó una Demanda sobre daños y perjuicios en contra del Municipio Autónomo de San Juan (Municipio), el Gobierno de Puerto Rico (Gobierno o Estado) y varias personas y entidades de nombres desconocidos. En su reclamación, la señora Rodríguez Negrón alegó que el 16 de noviembre de 2023 sufrió una caída en una acera ubicada en la Avenida Ponce de León, frente al Edificio Nacional en Hato Rey. Expuso que la acera en cuestión se encontraba en una condición "totalmente erosionada y destruida" y presentaba, además, "orificios y ondulaciones", por lo que era previsible, a su entender, que en el lugar ocurrieran accidentes.[1]

El Estado compareció mediante una *Moción solicitando exposición más definida*, en la que solicitó que se especificara con más detalle el lugar en donde había ocurrido el incidente. Por su parte, el Municipio presentó una *Solicitud de Desestimación y/o Sentencia Sumaria Parcial*. Alegó que la Avenida Ponce de León y sus aceras no están bajo su jurisdicción, control y mantenimiento, toda vez que el lugar le pertenece al Gobierno. De igual forma,

---

[1] Apéndice del *Certiorari*, pág. 84. Conforme a lo aducido por la Sra. María Mercedes Rodríguez Negrón (señora Rodríguez Negrón o peticionaria) en su Demanda, la caída provocó que tuviera que tomar tratamiento médico en el Hospital Pavía de Hato Rey y de Santurce debido a que sufrió fracturas en varias partes de su húmero derecho, resultándole altamente incapacitante por ser diestra. A base de lo anterior, reclamó una indemnización de $100,000 por las angustias y sufrimientos experimentados, así como por el impedimento físico residual y cualquier otro daño secuela del accidente. A su vez, solicitó una partida en concepto de costas, gastos, honorarios de abogado e intereses.

Por otro lado, la peticionaria informó que notificó su reclamación al Municipio Autónomo de San Juan (Municipio) y al Gobierno de Puerto Rico (Gobierno o Estado) conforme a los estatutos aplicables a este tipo de causa de acción.

expuso que de acuerdo con lo resuelto en *González Meléndez v. Mun. San Juan et al.*, *supra*, la peticionaria estaba impedida de continuar con su causa de acción, pues las reclamaciones de daños y perjuicios en contra de municipios por accidentes ocurridos en carreteras o aceras estatales están prohibidas expresamente. Por tanto, solicitó que se desestimara la Demanda instada en su contra.

Como consecuencia de lo expuesto, la señora Rodríguez Negrón presentó una Demanda Enmendada.[2] A su vez, instó una *Moción en reacción a solicitud de sentencia sumaria* en la que indicó no tener reparo en que se desestimara sin perjuicio la causa de acción presentada en contra del Municipio. Así las cosas, el 6 de mayo de 2024, el Tribunal de Primera Instancia notificó una Sentencia Parcial a esos efectos.

Posteriormente, el Estado presentó una *Contestación a Demanda Enmendada*. Entre las defensas a su favor, reclamó, en lo pertinente, que conforme a la Ley Núm. 49 de 1 de diciembre de 1917, según enmendada, conocida como *Ley de Travesías*, 9 LPRA sec. 12 *et seq.* (Ley de Travesías), la Carretera PR-25 (Avenida Ponce de León) es travesía del Municipio desde el kilómetro 0.57 al kilómetro 4.20. Por lo

---

[2] En esta ocasión, la señora Rodríguez Negrón detalló que cayó al suelo como resultado de la condición de la acera, pues tropezó con la superficie que circunvala tres remanentes de tubería que fueron dejados en el área por el que instaló la misma, luego de haberla cercenado. En esa línea, incluyó una foto para demostrar que la instalación de la tubería rompió y desniveló la acera. Indicó que, luego de la tubería ser cercenada, el desperfecto quedó más patente y peligroso, al haberse dejado los tubos con una elevación mayor a la acera. Por último, expresó que el responsable de la acera debió conocer el estado en que la dejó y nada hizo para corregir la condición peligrosa.

tanto, adujo que ni el Gobierno ni el Departamento de Transportación y Obras Públicas (DTOP) eran responsables del mantenimiento de la acera donde alegadamente ocurrió el accidente objeto del caso.

Por su parte, la señora Rodríguez Negrón presentó una *Moción solicitando enmendar Demanda por segunda ocasión* y una *Segunda Demanda Enmendada*. Solicitó que, al amparo de la acción directa que contempla la Ley Núm. 77 de 19 de junio de 1957, según enmendada, conocida como *Código de Seguros de Puerto Rico*, 26 LPRA sec. 101 *et seq.* (Código de Seguros), se le permitiera acumular a Mapfre Praico Insurance Company (Mapfre) como aseguradora del Municipio. De igual forma, esta vez incluyó a Claro Puerto Rico (Claro) como parte demandada. Alegó que el Municipio o el Estado habían sido negligentes al supervisar los trabajos que ellos mismos o Claro llevaron a cabo para remover unos postes que contenían líneas de comunicación en el área en cuestión.

El foro primario autorizó la presentación de la *Segunda Demanda Enmendada*. En respuesta, Claro y Mapfre, como su aseguradora, presentaron una *Solicitud de Desestimación Parcial y/o Sentencia Sumaria*. Según reclamaron, no existía relación alguna entre Claro y los elementos que provocaron los hechos descritos en la Demanda. Añadieron que los presuntos tubos u ondulaciones que provocaron la alegada caída de la señora Rodríguez

Negrón no le pertenecían ni fueron provocados por sus actos.

Ante ello, la peticionaria presentó una *Moción de desistimiento voluntario sin perjuicio parcial* en la que informó que desistía voluntariamente, sin perjuicio, de la causa de acción contra Claro y su aseguradora, Mapfre. Al mismo tiempo, la señora Rodríguez Negrón presentó una *Moción solicitando permiso para enmendar la Demanda* y una *Tercera Demanda Enmendada*. Expuso que, debido a los argumentos que hizo el Gobierno, se le hacía imperativo traer nuevamente al Municipio al pleito, ya que se le imputaba a este tener jurisdicción sobre la acera en controversia.

El 14 de noviembre de 2024, el Tribunal de Primera Instancia autorizó la enmienda solicitada. De igual forma, ese mismo día, el foro primario notificó una Sentencia Parcial en la que concedió el desistimiento sin perjuicio de la reclamación en contra de Claro y Mapfre, como su aseguradora.[3]

Así las cosas, Mapfre compareció mediante una *Solicitud de Desestimación y/o Sentencia Sumaria Parcial*. Alegó que, en ausencia de causa de acción contra el Municipio, no respondía por los daños reclamados por la peticionaria.

---

[3] El Tribunal de Primera Instancia señaló que el caso continuaría en contra del Gobierno y de Mapfre Praico Insurance Company (Mapfre), como aseguradora del Municipio. Véase, Apéndice del *Certiorari*, pág. 143. No obstante, lo cierto es que también continuó en contra del Municipio de San Juan, el cual fue incluido otra vez a la reclamación por medio de la *Tercera Demanda Enmendada*.

Por su parte, el Estado se opuso y solicitó que se dictara sentencia sumaria a su favor. Sostuvo que la Ley de Travesías les impone a los municipios la responsabilidad de conservar y mantener las aceras en zonas urbanizadas. Por tanto, entendía que, a pesar de que la Avenida Ponce de León es una carretera estatal bajo la jurisdicción del DTOP, la acera donde ocurrió el incidente está en el tramo que le corresponde al Municipio, por lo que este viene obligado a mantenerla en condiciones seguras para los peatones. Añadió que, aunque el ayuntamiento goza de inmunidad estatutaria, el tribunal debía evaluar si la falta de mantenimiento fue la causa directa del incidente. Señaló que, de ser así, entonces el tribunal tenía que considerar si el Municipio incurrió en negligencia al incumplir con su deber de mantener la acera en condiciones seguras y, en consecuencia, si a la peticionaria le asistía una indemnización por los daños sufridos. Adujo que la desestimación a favor del Municipio y su aseguradora no era automática porque, aunque el Municipio no respondía económicamente, sí estaría sujeto a la imposición de una porción de responsabilidad, lo que lo hacía parte indispensable.

La señora Rodríguez Negrón también presentó una oposición. Expresó que Mapfre presentó una Certificación no juramentada en la que afirmó que la acera le pertenecía al DTOP, mientras que el Gobierno, por su parte, presentó una Certificación no juramentada alegando que el mantenimiento

le pertenecía al Municipio. Por lo cual, argumentó que, con esas Certificaciones diametralmente contradictorias, el foro primario estaba impedido de dictar sentencia sumaria y, por el contrario, debía ordenar un descubrimiento de prueba.

Evaluados los escritos, el 17 de diciembre de 2024, el Tribunal de Primera Instancia notificó una Resolución Interlocutoria y Orden mediante la cual acogió los argumentos de la peticionaria y denegó las mociones dispositivas. Al así proceder concluyó que existía controversia sobre la jurisdicción, control y mantenimiento del lugar donde ocurrió la caída de la señora Rodríguez Negrón.

Ulteriormente, el Municipio presentó un *Aviso de comparecencia y en unión a solicitud y postura de Mapfre Praico Insurance Company*.[4] Al mismo tiempo, Mapfre y el Municipio presentaron una *Moción de Reconsideración*. En esta expusieron que de acuerdo con lo dispuesto en el Art. 1.053(g) de la Ley Núm. 107-2020, según enmendada, conocida como *Código Municipal de Puerto Rico*, 21 LPRA sec. 7084 (Código Municipal), y el caso de *González Meléndez v. Mun. San Juan et al.*, *supra*, la peticionaria carecía de una causa de acción contra el Municipio, aun cuando se determinara que este último tenía a cargo el mantenimiento

---

[4] Esto pues, surge de los autos que para el momento en que se presentó la *Solicitud de Desestimación y/o Sentencia Sumaria Parcial* de Mapfre, el Municipio no había sido emplazado. El emplazamiento ocurrió el 6 de diciembre de 2024, cuando el asunto ya se encontraba sometido para la consideración del foro primario. Véase, Apéndice del *Certiorari*, pág. 223.

de la acera estatal. Argumentaron que, teniendo inmunidad el Municipio, no era posible que se reclamara contra su aseguradora.[5]

Tanto la señora Rodríguez Negrón como el Estado se opusieron a la solicitud de reconsideración del Municipio y Mapfre.

Luego de celebrar una Vista Argumentativa sobre el asunto, el 28 de febrero de 2025, el Tribunal de Primera Instancia notificó una Sentencia Parcial y Orden. A través de esta, y luego de expresar que no había controversia en cuanto a que la acera ubicaba en una avenida estatal, determinó reconsiderar únicamente con respecto al Municipio, y desestimó con perjuicio la reclamación en su contra. En lo que respecta a Mapfre, el foro primario le ordenó que mostrara causa por la cual no debía denegar su solicitud, a tenor con lo dispuesto en el Art. 20.050 del Código de Seguros, 26 LPRA sec. 2004. Particularmente, le requirió que expusiera la razón por la cual, aun bajo la defensa de inmunidad de su asegurado, Mapfre no debía responder conforme a la póliza expedida en este caso, cuando estatutariamente existe una acción directa en contra del asegurador.

Según ordenado, Mapfre presentó una *Moción en Cumplimiento de Orden*. A grandes rasgos, expuso que, decretada la inexistencia de una causa de acción en contra

---

[5] El 13 de enero de 2025, el Estado presentó una *Contestación a Tercera Demanda Enmendada*. Apéndice del *Certiorari*, págs. 236-240.

del Municipio, no podía existir una reclamación en su contra. Adujo que el Código de Seguros establece que la aseguradora únicamente responde si su asegurado viene obligado legalmente a hacerlo. Además, añadió que mediante la Ley Núm. 143-2019 (2019 [Parte 2] Leyes de Puerto Rico 2017) —la cual enmendó la Ley Núm. 81-1991, conocida como *Ley de Municipios Autónomos de Puerto Rico*, 21 LPRA ant. sec. 4001 *et seq*. (*Ley de Municipios Autónomos*)— la Asamblea Legislativa pretendía proteger los recursos fiscales de los municipios, incluyendo aquellos incurridos en el pago de las primas a aseguradoras por casos de daños y perjuicios. Por lo cual, entendía que obligarle a permanecer en el pleito atentaba directamente contra el fin legislativo.

Tras concedérsele un término, la señora Rodríguez Negrón se opuso nuevamente. Alegó que Mapfre no logró establecer razón alguna por la cual el Tribunal de Primera Instancia debía dejar de aplicar el Art. 20.050 del Código de Seguros, *supra*. Esto, en cuanto a que, para que una póliza de seguro de una entidad gubernamental sea válida, la misma debe disponer que el asegurador no podrá aducir la defensa de inmunidad gubernamental en ninguna acción que sea incoada en su contra con arreglo a dicha póliza o en virtud de la misma. Concluyó que, al amparo de lo anterior, el foro primario no podía extenderle a Mapfre una inmunidad que, por mandato de ley, se le prohibía levantar como defensa.

El 10 de abril de 2025, el Tribunal de Primera Instancia notificó una Resolución en la que denegó reconsiderar su decisión de no desestimar el caso a favor de Mapfre, como aseguradora del Municipio. Expresó que nuestro ordenamiento busca proteger al perjudicado y garantizar que este pueda ser indemnizado según el límite de responsabilidad establecido en la póliza de seguro. Añadió que, según el Art. 20.050 del Código de Seguros, *supra*, en los casos que se trate de la aseguradora del Estado, sus dependencias, municipios u otras subdivisiones políticas, aun cuando estos respondan por el límite de responsabilidad establecido por ley, la aseguradora responde hasta el grado de indemnización cobrable real provisto por el Contrato de Seguro. Haciendo alusión a *Rodríguez v. Maryland Casualty Company*, 369 F. Supp. 1144 (1971) y a *Mintatos v. Municipality of San Juan ACE*, 322 F. Supp. 2d 143 (D.P.R. 2004), el foro primario expresó que en el ámbito federal se ha interpretado que el límite de responsabilidad de un municipio no se extiende a su aseguradora, pues fue creado para el beneficio y protección del municipio únicamente. Comparó la situación del caso de autos con lo ocurrido en *Aetna Life & Cas. Co. v. Americana of P.R.*, 103 DPR 681 (1975), en donde se manifestó que la exención estatutaria de responsabilidad concedida a un hotel no beneficiaba a la aseguradora de este por tratarse de un privilegio y una defensa personal o privativa del primero.

En vista de lo expuesto, el Tribunal de Primera Instancia razonó que le parecía impertinente si el Municipio poseía inmunidad por sus acciones u omisiones en la administración, mantenimiento o conservación de las aceras estatales, pues entendía que la responsabilidad de la aseguradora provenía de una acción directa e independiente. En consecuencia, y en ausencia de evidencia de que la póliza excluyera específicamente cubierta a acciones u omisiones culposas o negligentes, el foro primario concluyó que no procedía extender la inmunidad del Municipio como defensa en la acción directa contra la aseguradora.

Inconforme, el 9 de mayo de 2025, Mapfre presentó una petición de *certiorari* ante el Tribunal de Apelaciones. El 29 de mayo de 2025, el foro apelativo intermedio notificó una Sentencia mediante la cual revocó la Resolución Interlocutoria y Orden del Tribunal de Primera Instancia. Al así hacerlo, coligió que el foro primario había errado al mantener a Mapfre en el pleito, puesto que la ley y los hechos del caso reflejaban la inexistencia de una causa de acción en contra del Municipio por el accidente ocurrido en la acera estatal. Por lo cual, no habiendo una reclamación en contra del Municipio, consideró que no existía una razón por la que Mapfre tuviera que responder al amparo de su póliza. Según el Tribunal de Apelaciones, nuestro ordenamiento presupone la existencia de una causa de acción en contra de la entidad pública para que una parte

perjudicada tenga la opción de presentar una acción directa contra su aseguradora.

Insatisfecha con el revés judicial, la peticionaria presentó una Moción de Reconsideración, pero la misma fue denegada por el foro apelativo intermedio mediante Resolución notificada el 20 de junio de 2025. Todavía inconforme, el 18 de julio de 2025, la señora Rodríguez Negrón presentó un recurso de *certiorari* ante nos y reclamó que el Tribunal de Apelaciones incurrió en los errores siguientes:

> PRIMER ERROR: ERRÓ EL TRIBUNAL DE APELACIONES AL INTERPRETAR EL ARTÍCULO 20.050(2) DEL C[Ó]DIGO DE SEGURO[S] TITULADO SEGURO DE RESPONSABILIDAD SOBRE ENTIDADES PÚBLICAS, Y RESOLVER QUE EL SIGNIFICADO DE LA PROHIBICI[Ó]N LEGAL EXPRESA DE DICHO ESTATUTO DE LEVANTAR POR EL ASEGURADOR LA DEFENSA DE INMUNIDAD GUBERNAMENTAL SE REFIERE [Ú]NICAMENTE A LOS TOPES DE RESPONSABILIDAD DE $75,000 Y $150,000 Y NO AL T[É]RMINO DE [SIC] LEGAL INMUNIDAD DEFINIDO POR ESTE HONORABLE TRIBUNAL SUPREMO.
>
> SEGUNDO ERROR: ERRÓ EL TRIBUNAL DE APELACIONES AL RESOLVER QUE UN PERJUDICADO QUE SUFRE UN ACCIDENTE EN UNA ACERA ESTATAL, PERO QUE ESA ACERA ES MANTENIDA POR EL MUNICIPIO, NO TIENE DERECHO A ENTABLAR UNA ACCI[Ó]N DIRECTA CONTRA SU COMPA[ÑÍ]A DE SEGURO, QUIEN POR DISPOSICI[Ó]N EXPRESA DEL C[Ó]DIGO DE SEGURO[S] 20.050(2) NO PUEDE LEVANTAR, NI INCLUIR EN SU P[Ó]LIZA LA DEFENSA DE INMUNIDAD GUBERNAMENTAL DE SU ASEGURADO EL MUNICIPIO, QUIEN ES EL [Ú]NICO QUE GOZA DE ESA INMUNIDAD.

Contando con la comparecencia de las partes, y habiéndose expedido el auto de *certiorari*, nos encontramos en posición de resolver.

## II

### A. Inmunidad Municipal

El Código Municipal consiste "de una compilación sistemática, ordenada y actualizada de toda legislación municipal aprobada por la Asamblea Legislativa de Puerto Rico referente a la organización, gobierno, administración y funcionamiento de los municipios". Art. 1.002 del Código Municipal, 21 LPRA sec. 7002. Este cuerpo de normas "describe y ofrece el marco legal y jurídico para el descargue y ejecución de sus facultades, competencias y funciones". Íd.

Entre las capacidades reconocidas a los municipios en esta legislación se encuentran las de "[d]emandar y ser demandado". Art. 1.008(b) del Código Municipal, 21 LPRA sec. 7013. Así pues, como norma general, las reclamaciones de daños y perjuicios en contra de los municipios están permitidas, sujetas a unos requisitos de notificación y ciertos límites estatutarios. Arts. 1.051 y 1.052 del Código Municipal, 21 LPRA secs. 7082 & 7083. Sin embargo, existen instancias en las que la Asamblea Legislativa ha prohibido la presentación de reclamaciones extracontractuales en contra de estos entes públicos y, en cambio, les concedió inmunidad. Entre ellas, se encuentran las ocasiones en que ocurren accidentes en carreteras y aceras estatales. Art. 1.053(g) del Código Municipal, 21 LPRA sec. 7084. Debemos recordar que "la inmunidad supone la inexistencia de una causa de acción, mientras que la

imposición de límites de responsabilidad meramente establece un tope a la compensación que la parte demandante debe recibir". (Énfasis suprimido). *Negrón Castro et al. v. SLG et al.*, 2025 TSPR 96, págs. 19-20, 216 DPR __ (2025). Véanse, además, *Ortiz et al. v. Hosp. San Lucas et al.*, 205 DPR 222, 229 (2020); *Rodríguez Figueroa et al. v. Centro de Salud*, 197 DPR 876, 884-885 (2017). Por ende, "ambas figuras, aunque persiguen un fin similar, son excluyentes, dado que la aplicación de una necesariamente excluye la aplicación de la otra". *Íd.*

En *González Meléndez v. Mun. San Juan et al.*, *supra*, adjudicamos la controversia de si los municipios deben responder por reclamaciones en daños y perjuicios instadas en su contra por accidentes ocurridos en carreteras o aceras pertenecientes al Estado, pero que transcurren dentro de los límites territoriales municipales. Para ello, examinamos la derogada Ley de Municipios Autónomos y la enmienda que introdujo a ese estatuto la Ley Núm. 143-2019. Al así hacerlo, precisamos que el inciso (g) del Art. 15.005 (idéntico al ahora inciso (g) del Art. 1.053 del Código Municipal, *supra*) fue incorporado con el propósito de "proteger a los municipios contra acciones o reclamaciones por daños y perjuicios cuando ocurran accidentes en las carreteras o aceras propiedad del gobierno estatal". *González Meléndez v. Mun. San Juan et al.*, *supra*, pág. 614. Esto surge pues, "[e]l legislador consideró que la presentación de dichas acciones en contra

de los municipios impactaría la precaria situación fiscal de estos últimos y provocaría un aumento significativo en los costos de las pólizas de responsabilidad pública".[6] Íd., págs. 614-615.

En ese sentido, tras tomar en cuenta las expresiones previas de este Foro y las disposiciones de la Ley de Travesías y de otros estatutos pertinentes,[7] arribamos a la conclusión de que el factor determinante para que los municipios no respondan por daños y perjuicios en casos como estos es que exista un vínculo directo entre un accidente y el hecho de que el mismo ocurra en una carretera o acera propiedad del Estado. Es decir, una vez se determine que la carretera (y, por ende, su acera) es estatal, resulta inmaterial si el Municipio mantuvo la servidumbre de paso en condiciones razonables, pues la Asamblea Legislativa limitó la responsabilidad de este como cuestión de política pública y no contempló excepción alguna en ley.

---

[6] Véase, además, Exposición de Motivos de la Ley Núm. 143-2019 (2019 [Parte 2] Leyes de Puerto Rico 2017).

[7] Para un análisis detallado sobre las leyes y la jurisprudencia relacionada a la responsabilidad de conservar y mantener las carreteras, véase *González Meléndez v. Mun. San Juan et al.*, 212 DPR 601, 611-614 (2023). En lo pertinente, destacamos que en *Pérez v. Mun. de Lares*, 155 DPR 697, 711-712 (2001), resolvimos que procedía mantener una causa de acción en daños y perjuicios en contra de un municipio, tras razonar que la responsabilidad por el mantenimiento y la conservación de las aceras que colindan con las vías públicas estatales que atraviesan los pueblos les competen a los ayuntamientos. Sin embargo, en *González Meléndez v. Mun. San Juan et al.*, *supra*, págs. 620-621, variamos nuestra postura al respecto, pues tomamos en cuenta que posterior a *Pérez v. Mun. de Lares*, *supra*, la Asamblea Legislativa enmendó la Ley Núm. 81-1991, conocida como *Ley de Municipios Autónomos de Puerto Rico*, 21 LPRA ant. sec. 4001 *et seq.*, para incluir el inciso (g) del Art. 15.005. Por lo cual, concluimos que las circunstancias de ambos casos eran distintas y, por ende, lo resuelto.

**B. Derecho de Seguros**

   **i.   Contrato de Seguros en general**

El negocio de los seguros está revestido de un alto interés público. *Serrano Picón v. Multinational Life Ins.*, 212 DPR 982, 988-989 (2023); *W.M.M., P.F.M. et al. v. Colegio et al.*, 211 DPR 871, 884 (2023); *San Luis Center Apts. et al. v. Triple-S*, 208 DPR 824, 831 (2022). Esto, se debe a la importancia, la complejidad y el efecto que tiene en la economía y la estabilidad de nuestra sociedad. *Carrasquillo Pérez et. al. v. CSM*, 214 DPR 1033, 1049 (2024); *Consejo Titulares v. MAPFRE*, 208 DPR 761, 773 (2022); *Maderas Tratadas v. Sun Alliance et al.*, 185 DPR 880, 896 (2012).

En Puerto Rico, esta actividad se encuentra regulada extensamente en el Código de Seguros. *Serrano Picón v. Multinational Life Ins.*, *supra*, pág. 989; *Consejo Titulares v. MAPFRE*, *supra*, pág. 773. A su vez, está sujeta, de manera supletoria, a las disposiciones del Código Civil. Íd. Incluso, en vista de que nuestro Código de Seguros integra elementos de diversos sistemas de derecho, es posible recurrir a las normas más avanzadas del derecho civil y angloamericano por su valor persuasivo. *Consejo de Titulares v. Triple-S*, 2025 TSPR 82, 216 DPR __ (2025) (citando a *SLG Albert-García v. Integrand Asrn.*, 196 DPR 382, 389 (2016)). Véase, además, *CSMPR v. Carlo Marrero et als.*, 182 DPR 411, 424 (2011).

El Código de Seguros define el "seguro" como "el contrato mediante el cual una persona se obliga a indemnizar a otra o a pagarle o a proveerle un beneficio específico o determinable al producirse un suceso incierto previsto en el mismo". Art. 1.020 del Código de Seguros, 26 LPRA sec. 102. Por su parte, cataloga la "póliza" como "el instrumento escrito en que se expresa [el] contrato de seguro". Art. 11.140 del Código de Seguros, 26 LPRA sec. 1114.

La póliza de seguro contiene "los derechos y obligaciones de las partes contratantes, el nombre del asegurador y asegurado, la naturaleza de los riesgos que cubre, la cantidad del seguro, la declaración de la prima y las condiciones y exclusiones correspondientes al seguro". R. Cruz, *Derecho de Seguros*, San Juan, Pubs. JTS, 1999, pág. 4. En lo pertinente, las exclusiones son las que "limitan o excluyen el alcance de las cubiertas". R. Cruz, *op. cit.*, pág. 10. Es decir, estas excluyen de la cubierta general los riesgos o peligros que el asegurador así exprese. Íd. Por su parte, las condiciones contienen los derechos y las obligaciones tanto del asegurador como del asegurado. Íd., pág. 11. Es en esta parte "donde el asegurador condiciona su obligación indemnizatoria y también expresa cuáles son sus derechos y los del asegurado". Íd.

El contrato de seguro debe "[i]nterpretarse globalmente, a base del conjunto total de sus términos y

condiciones, según se expresen en la póliza y según se hayan ampliado, extendido, o modificado por aditamento, endoso o solicitud adherido a la póliza y que forme parte de [e]sta". Art. 11.250 del Código de Seguros, 26 LPRA sec. 1125. Ahora bien, debido a que este acuerdo es uno típico de adhesión, ante cualquier cláusula oscura con algún tipo de ambigüedad, dicho contrato será interpretado liberalmente en favor del asegurado y restrictivamente en contra del asegurador redactor del contrato. Art. 1248 del Código Civil 2020, 31 LPRA sec. 9802; R. Cruz, *op. cit.*, pág. 2.

### ii. Seguros públicos y la inmunidad gubernamental

Cuando una entidad gubernamental goza de inmunidad y adquiere un seguro de responsabilidad civil es posible que se generen diversas interrogantes. 7A *Couch on Insurance* 3d Sec. 103:3 (2025). Entre ellas, y de particular importancia al caso de epígrafe, puede preguntarse: ¿indica la adquisición del seguro la intención de renunciar a la inmunidad? Existen dos corrientes de opinión al respecto. Una de ellas sostiene que la inmunidad de una entidad gubernamental frente a responsabilidad extracontractual no se ve afectada por la contratación de un seguro destinado a protegerla de tal responsabilidad. Íd. Otras jurisdicciones, sin embargo, han aprobado legislación o resuelto judicialmente que la inmunidad gubernamental frente a la responsabilidad extracontractual se renuncia mediante la contratación de un seguro de indemnización y

que el asegurador no puede invocar la defensa de inmunidad del ente gubernamental. Íd. **En esos casos, la renuncia que se deriva de la contratación del seguro pudiera limitarse en su alcance a la cubierta que provea la póliza.** Íd. Un análisis de los artículos pertinentes del Código de Seguros y de la jurisprudencia interpretativa al respecto refleja que en Puerto Rico hemos adoptado ese último escenario. Veamos.

Los seguros de responsabilidad son considerados un tipo de seguro contra accidentes. Véase, Art. 4.080 del Código de Seguro, 26 LPRA sec. 408. Las disposiciones relativas a los seguros contra accidentes están contenidas dentro del Capítulo 20 del Código de Seguros. En cuanto a la responsabilidad del asegurador, el Art. 20.010 dispone que:

> **El asegurador que expidiere una póliza asegurando a una persona contra daños o perjuicios, por causa de responsabilidad legal por lesiones corporales,** muerte o daños a la propiedad **de una tercera persona, será responsable cuando ocurriere una pérdida <u>cubierta por dicha póliza</u>,** y el pago de dicha pérdida por el asegurador hasta el grado de su responsabilidad por la misma, con arreglo a la póliza, no dependerá del pago que efectué el asegurado en virtud de sentencia firme dictada contra él con motivo del suceso, ni dependerá de dicha sentencia. (Negrillas y subrayado suplidos).[8] 26 LPRA sec. 2001.

---

[8] Véase, *García v. Northern Assurance Co.*, 92 DPR 245, 255 (1965) ("Lo expuesto, en forma alguna quiere decir que el asegurador asume una responsabilidad absoluta. [E]sta depende de que la póliza cubra el riesgo").

Con respecto a los litigios contra el asegurado y el asegurador, el Art. 20.030 del Código de Seguros, añade lo siguiente:

> (1) La persona que sufriere los daños y perjuicios tendrá, a su opción, una acción directa contra el asegurador conforme a los términos y limitaciones de la póliza, acción que podrá ejercitar contra el asegurador solamente o contra [e]ste y el asegurado conjuntamente. La acción directa contra el asegurador se podrá ejercer solamente en Puerto Rico. **La responsabilidad del asegurador no excederá de aquella dispuesta en la póliza**, y el tribunal deberá determinar no solamente la responsabilidad del asegurador, sino que también la cuantía de la pérdida. **Cualquier acción incoada conforme a esta sección estará sujeta a las condiciones de la póliza o contrato y a las defensas que pudieran alegarse por el asegurador en acción directa instada por el asegurado.**
>
> (2) En una acción directa incoada por la persona que sufriere los daños y perjuicios contra el asegurador, [e]ste está impedido de interponer aquellas defensas del asegurado basadas en la protección de la unidad de la familia u otras inmunidades similares que estén reconocidas en el ordenamiento jurídico de Puerto Rico.
>
> (3) [...].[9] (Negrillas suplidas). 26 LPRA sec. 2003.

---

[9] Hemos reafirmado que la causa de acción en daños y perjuicios contra un municipio es distinta y separada a la de su aseguradora. *Torres Pérez v. Colón García*, 105 DPR 616, 626-627 (1977).

Véase, a su vez, a modo ilustrativo: *De León López v. Corporación Insular de Seguros*, 931 F.2d 116 (1er Cir. PR 1991) (En donde se expresó que un asegurador demandado directamente no puede esgrimir contra el demandante la defensa de inmunidad que pudiera corresponder al asegurado a tenor con la Undécima Enmienda de la Constitución federal) y *Ruiz Rodríguez v. Litton Industries Leasing Corp.*, 574 F.2d 44 (1er Cir. PR 1978) (En donde se concluyó que los aseguradores de los dueños de un barco estaban impedidos de alegar la defensa de inmunidad estatutaria, defensa que el patrono de los estibadores lesionados podía levantar a tenor con la ley aplicable de Puerto Rico. No obstante, se expuso que los aseguradores no respondían al amparo de la acción directa del estatuto puertorriqueño, pues bajo la póliza solo estaban cubiertos aquellos riesgos por los cuales los dueños del barco fuesen responsables. En otras palabras, no había una pérdida cubierta por la póliza, como se exige en el caso de una acción directa).

Por su parte, y en lo relacionado a los seguros de responsabilidad sobre entidades públicas, el Art. 20.050 detalla que:

(1) **La obtención de un seguro de responsabilidad** por el Estado Libre Asociado de Puerto Rico, sus dependencias o entidades, y **por los municipios** y otras subdivisiones políticas, **no constituirá ni se estimará que constituye una renuncia de inmunidad gubernamental, si la hubiere**, en la responsabilidad por actos u omisiones en que hubiere mediado culpa o negligencia por agentes y empleados públicos, **excepto hasta el grado de la indemnización cobrable real y efectivamente provista por dicho seguro en cuanto a un suceso en particular**. Sin embargo, no se considerará que existe tal renuncia de inmunidad en cuanto a ninguna reclamación o demanda contra tal entidad pública, a menos que dicha entidad renuncie expresamente a la inmunidad.

(2) Todas dichas pólizas de seguro deberán disponer que el asegurador no podrá aducir la defensa de inmunidad gubernamental en ninguna acción incoada contra el asegurador con arreglo a dicha póliza o en virtud de la misma.

(3) […].[10] (Negrillas y subrayado suplidos). 26 LPRA sec. 2004.

En el pasado, al interpretar los Art. 20.010 y 20.030 del Código de Seguros, *supra*, reconocimos "que [un] asegurador solo será responsable, según una póliza de seguros de responsabilidad civil, si el asegurado ha sido culposo o negligente". *SLG Albert-García v. Integrand Asrn.*, *supra*, pág. 394. Véase, además, *Almonte De Mejía v.*

---

[10] Véase, por ejemplo, *Rodríguez v. Maryland Casualty Co.*, 369 F. Supp. 1144, 1145 (1971) (En donde se reitera que las disposiciones de la ley de Puerto Rico de inmunidad municipal que limitan la responsabilidad por daños y perjuicios rigen únicamente para el beneficio y protección de los municipios y no tienen por mira ser de aplicación o beneficiar a sus aseguradoras). Véase, además, *Mintatos v. Municipality of San Juan ACE*, 322 F. Supp. 2d 143, 145 (D.P.R. 2004). Cónsono con ello, en *Quilez-Velar et al. v. Ox Bodies, Inc.*, 198 DPR 1079, 1093 (2017), reconocimos que, si bien los municipios autónomos gozan de unos límites monetarios en casos extracontractuales, si obtienen un seguro de responsabilidad, la aseguradora responderá hasta el tope de la cubierta.

*Díaz*, 86 DPR 111, 114 (1962). De igual forma, **hemos establecido que cuando no existe una causa de acción en contra de un asegurado por este ser inmune, el asegurador también carece de responsabilidad legal ante un tercero reclamante.** Sobre el particular, hemos dispuesto que:

> **No se trata […] de una *defensa* que pudiera levantar el asegurado y que, por consiguiente, esté impedida de derivar beneficio de ella la compañía aseguradora. Se trata, por el contrario, […] de la *inexistencia* de una causa de acción contra el Municipio asegurado. Por imperativo del arte de razonar correctamente—lógica—debemos concluir que no existiendo una causa de acción ejercitable contra el Municipio, *no puede venir a responder una aseguradora por lo que en derecho es inexistente*. El contrato de seguros no se puede extender para cubrir una responsabilidad que no tiene el asegurado.**[11] (Negrillas suplidas, bastardillas en el original). *Admor F.S.E. v. Flores Hnos. Cement Prods.*, 107 DPR 789, 794 (1978).

Ahora bien, en casos como el citado no se han evaluado las controversias atendidas a la luz de lo dispuesto en el Art. 20.050 del Código de Seguros, *supra*.[12] Por lo cual, **hoy aclaramos que, bajo la mencionada disposición, lo determinante será si la entidad pública contrajo una póliza**

---

[11] Véase, además: *Lind Rodríguez v. E.L.A.*, 112 DPR 67, 70 (1982) ("No existiendo causa de acción contra el asegurado, no responde su aseguradora"). Para una conclusión similar en un caso previo a la aprobación del Código de Seguros atendiendo la interrogante de si un hijo menor de edad no emancipado tiene una causa de acción en contra de su padre, por los daños y perjuicios sufridos como consecuencia de la negligencia de este último véase: *Guerra v. Ortiz*, 71 DPR 613, 624 (1950) ("Si no existe, como resolvemos, causa de acción en contra del padre en el presente caso, tampoco la hay en contra de la compañía aseguradora").

[12] Esto, en gran medida, pues ese caso tenía como base una póliza de seguro de automóvil y no un seguro de responsabilidad. Cabe mencionar que para el momento en que se emitió ese dictamen, lo dispuesto en el Art. 20.050 se encontraba codificado esencialmente bajo el Art. 20.040 del Código de Seguros. Sin embargo, esto fue modificado posteriormente tras aprobarse la Ley Núm. 186-2007 (2007 [Parte 2] Leyes de Puerto Rico 900).

**de responsabilidad cuyas disposiciones reflejen la intención de renunciar a la inmunidad que posee. Para ello, habrá que examinar las disposiciones del seguro adquirido con el fin de precisar el grado de indemnización cobrable al amparo del mismo. En particular, se deberá observar si la póliza brinda cubierta por el acto por el cual el ente público es inmune.[13] De ser así, la aseguradora quedará sujeta a responder en una acción directa hasta el grado de indemnización cobrable real y efectivamente provisto por el seguro.**

Expuesto el marco jurídico aplicable, pasemos a resolver.

## III

En este caso, no existe controversia en cuanto a que la acera en donde ocurrió el accidente alegado por la señora Rodríguez Negrón ubica en una carretera estatal. Por tanto, conforme a nuestras expresiones en *González Meléndez v. Mun. San Juan et al.*, *supra*, aun cuando el Municipio fuese responsable por el mantenimiento de la acera en cuestión, el ente público goza de inmunidad frente a reclamos de terceros. Ante ello, la interrogante a adjudicar es si Mapfre, como su aseguradora, debe permanecer en el pleito con el fin de responder de

---

[13] Nótese que al menos otros diez estados han aprobado legislación similar a la nuestra, estableciendo expresamente que la obtención de un seguro equivale a una renuncia parcial o total de la inmunidad gubernamental, dependiendo de la extensión y el grado indemnizable bajo la póliza. Véase, 4 *New Appleman on Insurance Law Library Edition* Sec. 34.05[3][c] & Apéndice 34-B, págs. 34-32, 33, 47, 48, 49, 50 & 51 (Rel. 14-12/2015).

determinarse que hubo negligencia por parte del Municipio.
Para contestar dicha premisa, y conforme al derecho antes
expuesto, debemos examinar si existía alguna póliza de
responsabilidad expedida a favor del Municipio que cubra el
riesgo reclamado en el caso, a saber: un accidente ocurrido
en una acera estatal, para la cual el ayuntamiento pudiese
tener el deber de cuidar y mantener al amparo de la Ley de
Travesías.

Sobre el particular, si bien del expediente observamos
que para el periodo en que acontecieron los hechos alegados
había una póliza de responsabilidad emitida por Mapfre, la
cubierta y las condiciones especiales del acuerdo en torno
a la responsabilidad pública del Municipio comprendía, en
lo pertinente, lo siguiente:

> SECTION I - COVERAGES
>
> COVERAGE A - BODILY INJURY AND PROPERTY DAMAGE
> LIABILITY
>
> 1. Insuring Agreement
>
> **a. We will pay those sums that the insured
> becomes <u>legally obligated to pay</u> as damages
> because of "bodily injury" or "property damage"
> to which this insurance applies".** […]
>
> <u>SPECIAL CONDITIONS</u>
> […]
>
> II. COMMERCIAL GENERAL LIABILITY CONDITIONS
> […]
>
> 3. EXTENSION ENDORSEMENT
>
> It is hereby understood and agreed that **any and
> all premises owned, newly acquired, leased,
> borrowed, and/or occupied by the Municipality of
> San Juan are covered to** office buildings
> municipality, **streets,** avenues, highways,
> **sidewalks and other paved surfaces, roads,**
> recreational facilities, including swimming
> pools, beaches, gymnasiums, coliseums,
> basketball, volleyball and tennis courts,

baseball stadiums and parks, playgrounds, plazas, day care and elderly care centers, head start centers, health facilities, schools, municipal police stations and firing ranges, museums, theater, hotels, parking, cemeteries, waste landfills and/or garbage or refuse dumps, recycling collection centers, water treatment plants, sewers, public housing building, warehouses, land and vacant lands will be covered **under this policy** all while located in [sic] anywhere in Puerto Rico.

It is here by understood and agreed that **any and all of the Municipality of San Juan's operations are covered under this policy** to those listed on the attached classification schedule those [sic] **related to the above mentioned premises, such as** cleaning, **maintenance**, construction, and repairs **of the insured premises**, fairs (fiestas patronales) carnivals, sporting contests, (wherever conducted), summer camps, recreational and cultural activities, athletic games and exhibitions sponsored by the Insured, construction activities, excavations works, contractor's and mobile equipment operation, unless specifically excluded.

[…]

11. HOUSING PROJECTS, STATE SCHOOLS, AND STATE ROADS COVERAGE

**This policy shall apply to claims or "suits" against the Insured alleging bodily injury or property damage arising in connection with any** Housing Project, State School, or **State Road for which the Insured is, or may become, responsible under a current or future management or administration contract.** (Negrillas y subrayado suplidos). Apéndice del *Certiorari*, págs. 302, 346, 348-349 & 352.

Así pues, una lectura de la póliza de seguro y, particularmente, de las cláusulas citadas, permite colegir que el grado de indemnización provisto en el acuerdo no incluía reclamaciones por daños ocurridos en carreteras o aceras pertenecientes al Estado cuyo deber de conservar o mantener le correspondiese al Municipio por ser una travesía dentro de su límite territorial. Contrario a ello,

la Póliza refleja que la misma brindaba cubierta, de manera general, por reclamaciones en las que el ente público estuviese "obligado a pagar legalmente" alguna cuantía.[14] En otras palabras, la misma cubría instancias en las que surgiese alguna reclamación válida de responsabilidad en contra del Municipio, lo que aquí no sucede. Si bien observamos que las condiciones especiales del acuerdo extendieron la cubierta para incluir ciertos riesgos particulares (tales como accidentes ocurridos en aceras o carreteras pertenecientes al Municipio o que fuesen del Estado, pero que el ayuntamiento hubiese pactado manejar o administrar) en este caso no se ha alegado afirmativamente ni se ha puesto en controversia que estemos ante alguno de esos escenarios.

---

[14] Recientemente, en *Negrón Castro et al. v. SLG et al.*, 2025 TSPR 96, 216 DPR __ (2025), en el contexto de una controversia suscitada sobre los límites de responsabilidad establecidos a favor de los Centros Médicos Académicos Regionales (CMAR) y su facultad docente, nos enfrentamos a un acuerdo que también limitaba la responsabilidad de una compañía aseguradora a aquellos incidentes por los que sus asegurados estuviesen obligados a responder legalmente. En ese entonces, resultó necesario adjudicar si esta clase de disposición implicaba que la aseguradora intentaba restringir ilegalmente su responsabilidad a los límites monetarios que la Asamblea Legislativa le había concedido a los doctores y a hospitales allí envueltos. No obstante, tras un análisis ponderado del asunto, respondimos la interrogante expuesta en la negativa. En esa línea, razonamos que este tipo de lenguaje no podía considerarse como constitutivo de una Cláusula de Exclusión, **sino como una condición típica incluida en estos acuerdos, destinada a evitar brindarle cubierta a un asegurado por obligaciones que este haya asumido voluntariamente.** Es decir, **bajo esta disposición, el alcance de la Póliza expedida se limitaría únicamente a las obligaciones que la ley reconoce y que hace cumplir entre las partes. Lógicamente, estas obligaciones legales deberían incluir no tan solo Sentencias dictadas por los tribunales, sino también <u>cualquier reclamación válida de responsabilidad</u> una vez la misma surja.** (Negrillas y subrayado suplidos). Véase, *Negrón Castro et al. v. SLG et al.*, *supra*, págs. 15-16 (citando a T.A. Guertin y T.A. Saxe, *Insurance Coverage of Construction Disputes*, 2d ed., Thompson Reuters, 2025, Sec. 6:7).

En vista de ello, entendemos que Mapfre no debe permanecer en este pleito. Como expusimos previamente, la responsabilidad de una aseguradora en situaciones como la presente está condicionada a que el Municipio haya adquirido una póliza de seguro que cubra el riesgo reclamado, de manera que se constituya una renuncia a la inmunidad del ayuntamiento en la extensión que contempla el Art. 20.050 del Código de Seguros, *supra*. De no acreditarse la existencia de dicha cubierta, no es posible sujetar a una aseguradora a responder en acción directa por un asunto que no pactó.

Revisado *de novo* el expediente, y luego de verificar que se cumplen los requisitos de forma y que no existen hechos materiales en controversia, entendemos que el Tribunal de Primera Instancia se equivocó en su razonar. Véase: Regla 36 de Procedimiento Civil, 32 LPRA Ap. V; *Meléndez González et al. v. M. Cuebas*, 193 DPR 100, 117-119 (2015). Al amparo del derecho aplicable, y de los documentos que obran en los autos del caso, procedía la desestimación de la causa de acción en contra de Mapfre. Por ende, confirmamos el dictamen del foro apelativo intermedio. No obstante, el pleito continuará en contra del Estado.

**IV**

Por los fundamentos antes expuestos, se confirma la Sentencia recurrida del Tribunal de Apelaciones. Se devuelve el caso al Tribunal de Primera Instancia para que

continúen los procedimientos de acuerdo con lo aquí resuelto.

Se dictará Sentencia en conformidad.


Mildred G. Pabón Charneco
Jueza Asociada

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| María Mercedes Rodríguez Negrón<br><br>        Peticionaria<br><br>            v.<br><br>Estado Libre Asociado de Puerto Rico y otros<br><br>        Recurridos | CC-2025-0453 |

SENTENCIA

En San Juan, Puerto Rico, a 4 de agosto de 2026.

Por los fundamentos expuestos en la Opinión que antecede, los cuales se hacen formar parte de esta Sentencia, se confirma la Sentencia recurrida del Tribunal de Apelaciones. Se devuelve el caso al Tribunal de Primera Instancia para que continúen los procedimientos de acuerdo con lo aquí resuelto.

Lo acordó el Tribunal y certifica el Secretario del Tribunal Supremo. La Jueza Presidenta Oronoz Rodríguez y el Juez Asociado señor Estrella Martínez disienten con Opinión escrita. El Juez Asociado señor Colón Pérez disiente del curso de acción seguido por una mayoría de este Tribunal en el presente caso y hace constar las siguientes expresiones:

> En esta ocasión, estábamos llamadas y llamados a justipreciar si procede, o no, una acción directa instada en contra de una aseguradora de un municipio por un accidente ocurrido en una acera estatal dentro de su jurisdicción. Lo anterior, ante una alegada inmunidad que cobija a la referida entidad pública asegurada. **A nuestro juicio, dicha interrogante ya fue contestada, -- con meridiana claridad --, por la Asamblea Legislativa: "[E]l asegurador no podrá aducir la defensa de inmunidad gubernamental en ninguna acción incoada contra el asegurador con arreglo a dicha póliza o en virtud de la misma".** (Énfasis suplido). Art.

20.050 de la Ley Núm. 77 de 19 de junio de 1957, mejor conocida como el Código de Seguros de Puerto Rico (en adelante, "Código de Seguros"), 26 LPRA secs. 101 *et seq.*

No empece a ello, hoy una mayoría de mis compañeras y compañeros de estrado, en un lamentable proceder, decide ignorar el lenguaje inequívoco de la precitada disposición estatutaria, bajo el pretexto de cumplir su supuesto espíritu. Ello, en un empeño forzado de liberar de responsabilidad a las compañías aseguradoras, en perjuicio de quienes han sufrido accidentes a causa de actuaciones u omisiones negligentes de las administraciones municipales en el desempeño de su deber de mantener condiciones seguras en las vías peatonales dentro de su demarcación territorial.

**Conocido es el principio de hermenéutica que instaura nuestra legislación civil de que "[c]uando la ley es clara y libre de toda ambigüedad, su texto no debe menospreciarse bajo el pretexto de cumplir su espíritu"**. Art. 19 del Código Civil, 31 LPRA 5341. En lo que a la causa de epígrafe se refiere, no vemos qué valor o principio de mayor jerarquía podría justificar apartarse de esa norma tan fundamental de interpretación estatutaria.

**Y es que, tal como expusimos recientemente al enfrentarnos a una controversia similar a la de autos, incluir una cláusula en una póliza para limitar, -- sin hacer excepción alguna --, la responsabilidad de una compañía aseguradora a aquella a la que su entidad pública asegurada realmente termine obligada a indemnizar tiene el efecto práctico de circunvenir la referida prohibición expresa del Código de Seguros,** *supra*, **por lo que se tiene que considerar nula al ser contraria a la ley y al orden público.** *Negrón Castro et. al. v. SLG et al.*, 2025 TSPR 96, págs. 32-36, 216 DPR __ (2025) (Colón Pérez, opinión concurrente). Ello, toda vez que la ley y la jurisprudencia prohíben que las aseguradoras, al ser demandadas directamente por daños y perjuicios, interpongan defensas personales de sus entidades públicas aseguradas, las cuales fueron creadas para proteger a estas últimas, y no a las primeras. *Íd.*, pág. 36. Véase, además, *Rodríguez v. Integrand Assurance Company*, 196 DPR 382, 393 (2016); *Torres Pérez v. Colón García*, 105 DPR 616, 627 (1977); *Cortés Román v. Estado Libre Asociado De Puerto Rico,* 106 DPR 504, 506;

*Vázquez v. Northern Assurance Co.*, 92 DPR 245, 253 (1965).

Siendo ello así, somos del criterio de que, -- como correctamente sentenció el Tribunal de Primera Instancia --, en el presente litigio, no procedía desestimar sumariamente una acción directa incoada en contra de una aseguradora que se ha querido beneficiar de una exoneración legal que, simple y sencillamente, no fue creada para ella ni está a su alcance, por mandato legislativo expreso. Como ese no fue el curso de acción aquí seguido, respetuosamente, no nos queda más que disentir del dictamen que hoy emite este Tribunal.

Javier O. Sepúlveda Rodríguez
Secretario del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

María Mercedes Rodríguez
Negrón

    Peticionaria

       v.                        CC-2025-0453

Estado Libre Asociado de
Puerto Rico y otros

    Recurridos


La Jueza Presidenta ORONOZ RODRÍGUEZ emitió una Opinión disidente


En San Juan, Puerto Rico, a 4 de agosto de 2026.

Respetuosamente disiento del curso de acción tomado por una mayoría de este Tribunal, toda vez que resolvió prematuramente una controversia distinta a la que correspondía adjudicar en esta etapa del litigio. En particular, amparándose en la inmunidad estatutaria que se le reconoció a los municipios en González Meléndez v. Mun. San Juan *et al.*, 212 DPR 601 (2023), respecto a reclamaciones de daños y perjuicios por accidentes ocurridos en carreteras o aceras estatales, resuelve que la aseguradora del municipio tampoco responde en una acción directa. Sin embargo, la Opinión mayoritaria arriba a una conclusión cuya procedencia dependía, precisamente, de una determinación fáctica

y jurídica que aún no está resuelta. Al centrar el análisis en la responsabilidad de la aseguradora, la mayoría desvió la atención del asunto medular y esto condujo a la adjudicación prematura de controversias que no son susceptibles de ser resueltas en esta etapa de los procedimientos.

A la luz de lo anterior, conviene reseñar los hechos procesales relevantes que dieron paso a la controversia. En apretada síntesis, la Sra. María Mercedes Rodríguez Negrón (señora Rodríguez Negrón) presentó una demanda sobre daños y perjuicios en contra del Municipio Autónomo de San Juan (Municipio de San Juan), el Estado Libre Asociado de Puerto Rico y otras partes. Alegó que sufrió una caída en una acera que ubica en la Avenida Ponce de León. Luego de varios incidentes procesales, Mapfre Praico Insurance Company (Mapfre), como aseguradora del Municipio de San Juan, y el Estado Libre Asociado de Puerto Rico, supliendo la capacidad legal del Departamento de Transportación y Obras Públicas, presentaron solicitudes de sentencia sumaria de manera individual. No obstante, el Tribunal de Primera Instancia las denegó por entender que existía controversia sobre la jurisdicción, el control y el mantenimiento del lugar donde ocurrieron los hechos, pues las partes presentaron certificaciones contradictorias. Así las cosas, ordenó la continuación de los procedimientos, incluido el descubrimiento de prueba. No obstante, luego de celebrar una vista argumentativa, reconsideró su dictamen y desestimó la

causa de acción respecto al Municipio de San Juan con perjuicio.

A partir de este trasfondo fáctico, se hace patente el primer salto jurídico de la determinación mayoritaria. De entrada, la controversia que correspondía atender no era el alcance de la inmunidad municipal ni sus efectos sobre la responsabilidad de la aseguradora. Por el contrario, la cuestión medular consiste en determinar a quién corresponde la jurisdicción y el control de la acera en controversia (es decir, quién es el dueño de la acera), pues de esa determinación depende la aplicación misma de la inmunidad, y la posterior y potencial responsabilidad de su aseguradora. A tales efectos, la inmunidad de un municipio no opera en el vacío, sino que aplica cuando el accidente ocurre en una carretera o acera estatal. Dicho de otro modo, es una conclusión jurídica de unos hechos establecidos previamente. Por ello, la titularidad o jurisdicción sobre el lugar donde ocurrió el presunto accidente no es un hecho accesorio, sino el elemento esencial sobre el que se fundamenta la inmunidad del municipio y determina si existe o no una causa de acción en su contra.

Precisamente por ello, tal cual expresé en González Meléndez v. Mun. San Juan *et al.*, *supra*, este caso no es susceptible de ser resuelto por la vía sumaria. Conforme la Regla 36.3(e) de Procedimiento Civil, 32 LPRA Ap. V, se dictará sentencia sumaria cuando la evidencia demuestre que no hay controversia real sustancial en cuanto a hechos esenciales y pertinentes. Como hemos reiterado, este

mecanismo resulta improcedente cuando subsisten hechos materiales y esenciales controvertidos, o cuando existe una controversia real sobre alguno de ellos. Pepsi-Cola v. Mun. Cidra *et al.*, 186 DPR 713, 757 (2012). Por ello, antes de eximir de responsabilidad a los municipios, por virtud de la inmunidad estatutaria, o a su aseguradora, los tribunales deben contar con prueba suficiente que les permita concluir, sin controversia real sustancial de hechos esenciales y pertinentes, que la acera donde ocurrió el accidente era, en efecto, estatal.

El acercamiento mayoritario parte de una aseveración fácticamente incorrecta, pues asume que, por el mero hecho de que la carretera sea estatal, la acera contigua necesariamente comparte esa misma naturaleza. Previamente, en González Meléndez v. Mun. San Juan *et al.*, *supra*, una mayoría de este Tribunal expresó que "[t]oda vez que el Gobierno aceptó que la Avenida Luis Muñoz Rivera es estatal y, por ende, su acera, resulta inmaterial discutir si el Municipio mantuvo la servidumbre de paso en condiciones razonables, pues el legislador limitó su responsabilidad como cuestión de política pública". Íd., pág. 620. Como un calco de lo anterior, la Opinión mayoritaria sostiene en este caso que "una vez se determine que la carretera (y, por ende, su acera) es estatal, resulta inmaterial si el Municipio mantuvo la servidumbre de paso en condiciones razonables, pues la Asamblea Legislativa limitó la responsabilidad de este como cuestión de política pública y

no contempló excepción alguna en ley".[1] Así, la mayoría concluye que no existe controversia en cuanto a que la acera donde ocurrió el accidente alegado ubica en una carretera estatal y, en consecuencia, extiende al Municipio de San Juan la inmunidad reconocida por ley. A mi juicio, este análisis evidencia una lectura expansiva --e incorrecta-- del precedente. La mayoría transforma un pronunciamiento previo particular, en una norma de aplicación general.

En vista de lo anterior, la Opinión mayoritaria descansa, de manera equivocada, sobre una determinación de hecho que nunca se estableció propiamente y que, además, carece de apoyo en el expediente. Por el contrario, como cuestión de hecho, el Estado Libre Asociado de Puerto Rico presentó una certificación en la que asevera que el tramo de la acera donde se cayó la señora Rodríguez Negrón es una acera municipal. Más aún, ignora que, si bien existen carreteras estatales con aceras estatales, y existen carreteras municipales con aceras municipales, **también existen carreteras estatales con aceras municipales**. Así, el mero hecho de que la carretera sea estatal no resuelve la controversia de un caso como el de autos.[2] En ese sentido, el proceder mayoritario convierte en un automatismo lo que debería ser objeto de un análisis fáctico y jurídico **caso a caso.**

---

[1] Opinión mayoritaria, pág. 15
[2] Como dato adicional, en la práctica, el Gobierno Central y los municipios en muchas ocasiones suscriben convenios mediante los cuales --a cambio de un pago-- distribuyen responsabilidades sobre las carreteras estatales y sus zonas aledañas dentro de los límites municipales. En dichos convenios también se delimitan muchas veces las responsabilidades sobre daños a terceros.

Ahora bien, ciertamente, si se determinara que la acera es estatal y, por consiguiente, que el municipio está cobijado por la inmunidad estatutaria, resultaría forzoso concluir que no existe una obligación de trasladar la responsabilidad a su aseguradora y esta última no viene llamada a responder. Ello, pues la responsabilidad de la aseguradora tiene un carácter derivativo, toda vez que el seguro no crea una fuente independiente de responsabilidad, sino que traslada el riesgo económico de una responsabilidad que ya existe. Consecuentemente, no puede existir una obligación de la aseguradora cuando no existe una obligación de la parte asegurada. No obstante, ese análisis solo cobra pertinencia una vez se haya establecido el presupuesto fáctico que activa la inmunidad, el cual, en este caso, permanece sin ser probado.

En otras palabras, la mayoría resolvió las consecuencias jurídicas de una inmunidad cuya aplicación nunca se estableció. En lugar de determinar, en primera instancia, si la acera era estatal --presupuesto indispensable para la inmunidad--, dio ese hecho por sentado y, sobre esa premisa, descartó tanto la responsabilidad del municipio como la de su aseguradora. Lejos de sostener ese razonamiento, el expediente demuestra que subsiste una controversia genuina sobre cuál entidad ostenta la titularidad, la jurisdicción y el control de la acera en controversia. Resolver por la vía sumaria supone adjudicar prematuramente aquellos hechos que condicionan la aplicación de la inmunidad y cuyo efecto pudiera excluir del litigio a

una entidad que, tras la debida adjudicación de los hechos, resulte responsable. Ante esto, disiento respetuosamente.


                              Maite D. Oronoz Rodríguez
                                   Jueza Presidenta

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| María Mercedes Rodríguez Negrón<br><br>Peticionaria<br><br>v.<br><br>Estado Libre Asociado de Puerto Rico y otros<br><br>Recurridos | CC-2025-0453 | *Certiorari* |

Opinión disidente del Juez Asociado Señor ESTRELLA MARTÍNEZ.

En San Juan, Puerto Rico a 4 de agosto de 2026.

En *González Meléndez v. Mun. San Juan et al.*, 212 DPR 601 (2023) disentí de la interpretación –en extremo amplia– que la *Opinión* mayoritaria realizó del inciso (g) del Art. 15.005 de la derogada Ley Núm. 81-1991, *Ley de Municipios Autónomos de Puerto Rico*, 21 LPRA ant. sec. 4705, hoy equivalente al inciso (g) del Art. 1.053 de la Ley Núm. 107-2020, *Código Municipal de Puerto Rico*, 21 LPRA sec. 7084. *González Meléndez v. Mun. San Juan et al., supra,* pág. 623. (*Expresión disidente* del Juez Asociado señor Estrella Martínez a la que se unieron la Jueza Presidenta Oronoz Rodríguez y el Juez Asociado señor Colón Pérez).

En específico, sostuve que el determinar que el referido inciso (g) le brindó **inmunidad absoluta** a los

municipios por cualquier accidente que ocurra en una acera o carretera estatal pasa por alto que existen instancias en las que, de manera voluntaria o por contratación, estos ayuntamientos ejercen funciones de control, cuidado y mantenimiento sobre tales aceras o carreteras estatales. Íd. Ante ello, expresé que, antes de pautar una norma absolutista de inmunidad municipal, se debió tomar en consideración que: (1) no se podía concluir que la intención legislativa fuese liberar a los municipios de cualquier tipo de responsabilidad basada exclusivamente en la posesión de la acera por parte del Estado, sino por accidentes en aceras estatales fuera de su control; (2) es contraria al estándar en materia de responsabilidad civil extracontractual que requiere demostrar la relación causal entre el daño y quien lo causó; y (3) es una carta en blanco que liberaría a los municipios de cualquier tipo de responsabilidad cuando sean causantes o cocausantes de daños extracontractuales, en perjuicio de los ciudadanos damnificados. Íd., pág. 624.[1]

Sostengo que el propósito de la referida inmunidad municipal era evitar que los ayuntamientos fuesen responsables económicamente por accidentes ocurridos en aceras o carreteras dentro de su límite territorial, pero

---

[1] Para un análisis sobre este precedente, véase L. M. Pellot Juliá, *Análisis del término 2023-24: Responsabilidad Civil Extracontractual*, 94 Rev. Jur. UPR 149, 158-164 (2025).

sobre las cuales no ejercían ningún grado de control, responsabilidad o autoridad por pertenecerles al Estado. Como cuestión de hecho, la *Exposición de Motivos* de la Ley Núm. 143-2019, la cual enmendó el referido inciso (g) de la derogada *Ley de Municipios Autónomos de Puerto Rico*, dispuso que era "necesario establecer un régimen legal justo para que los municipios no sean responsables por la alegada negligencia del Estado, en cuanto al mantenimiento de sus carreteras y aceras". Íd.[2] De esta manera, los costos en prima por pólizas de seguros de responsabilidad pública municipal no aumentarían, ni se afectaría su situación fiscal. El precedente establecido en *González Meléndez v. Mun. San Juan et al., supra,* soslayó que una de sus evidentes consecuencias y efecto práctico es que transfirió al Estado –exclusivamente– la obligación y carga económica de responder civilmente por todos los accidentes acontecidos en las aceras y carreteras estatales, indistintamente de que estuviesen bajo su control y presupuesto.

Nuevamente este Tribunal, con su actual proceder, mediante una aplicación expansiva de lo resuelto en *González Meléndez v. Mun. San Juan et al., supra,* al confirmar la desestimación de la demanda en contra de Mapfre Praico Insurance Company, como aseguradora del

---

[2] Véase, además, el *Informe Positivo* sobre el P. del S. 1022 del 25 de junio de 2019, presentado por la Comisión de Asuntos Municipales de la Cámara de Representantes.

Municipio de San Juan, limita aún más la posibilidad de que las personas agraviadas ante las acciones culposas o negligentes de los entes municipales puedan obtener un remedio judicial. En concreto, con el dictamen al que hoy se arriba se torna inoperante la causa de acción directa contra el asegurador que el Art. 20.030 del *Código de Seguros de Puerto Rico*, 26 LPRA sec. 2003, la reconoce expresamente a una persona que sufra daños y perjuicios, sujeto a los términos y condiciones de la póliza pactada. Véase *SLG Albert-García v. Integrand Asrn.,* 196 DPR 382, 391 (2016). Debemos tener presente que la referida causa de acción directa contra el asegurador, creada estatutariamente como cuestión de derecho sustantivo, es una distinta y separada de la acción que, por los mismos hechos, puede instar ese tercero agraviado contra el asegurado. Íd., pág. 393.

En ese extremo, considero incorrecto afirmar, como lo hizo el Tribunal de Apelaciones, que la causa de acción directa en contra de la aseguradora está supeditada o condicionada a la existencia de una causa de acción en contra del municipio asegurado. Todo ello abona a mi postura de disentir en el presente caso, puesto que tanto en *González Meléndez v. Mun. San Juan et al., supra,* como en el caso ante nos existía una controversia fáctica y material sobre si era el Estado o el municipio quien tenía la responsabilidad respecto al control, cuidado y

mantenimiento de la acera en la que ocurrieron los alegados hechos. Recordemos que tanto el Estado como la demandante en el asunto de epígrafe, la Sra. María Mercedes Rodríguez Negrón, sostienen que el Municipio de San Juan ostenta la jurisdicción de la referida acera en virtud de la *Ley de Travesías*, Ley Núm. 49 de 1917, 9 LPRA sec. 12, la cual adujeron no ha sido derogada expresa ni implícitamente por el *Código Municipal de Puerto Rico*, *supra*.

Todavía más, considero que la interpretación mayoritaria, respecto a que la inclusión y el alcance de una cláusula —enteramente contractual— entre la aseguradora y el municipio aquí demandados, exonera a la primera de cualquier responsabilidad en contravención al claro mandato de los Arts. 20.010, 20.030 y 20.050 del *Código de Seguros de Puerto Rico*, 26 LPRA secs. 2001, 2003 y 2004. En específico, la *Opinión* mayoritaria concluyó que "Mapfre solo se obligó a responder por aquellos daños por los que el Municipio estuviese "legalmente obligado a pagar"" ("*legally obligated to pay as damages*"). El curso mayoritario desatiende que no solamente el *Código de Seguros de Puerto Rico* permite las acciones directas en contra del asegurador —lo que sin duda constituye una reclamación válida, exigible conforme a la ley por tratarse de una obligación voluntariamente adquirida por el asegurado—, sino que además reconoce expresamente que

la responsabilidad del asegurador no dependerá del pago que efectúe el asegurado en virtud de una sentencia. Así, la responsabilidad del asegurador por las acciones culposas o negligentes del asegurado no está condicionada a que este último esté obligado legalmente a responder por medio de un dictamen ni a que la parte perjudicada hubiese presentado una causa de acción inicialmente en contra del asegurado. En particular, la disposición legal aplicable a esos efectos dispone:

> **Artículo 20.010. Responsabilidad del Asegurador**
>
> El asegurador que expidiere una póliza asegurando a una persona contra daños o perjuicios, por causa de responsabilidad legal por lesiones corporales, muerte o daños a la propiedad de una tercera persona, será responsable cuando ocurriere una pérdida cubierta por dicha póliza, y el pago de dicha pérdida por el asegurador hasta el grado de su responsabilidad por la misma, con arreglo a la póliza, no dependerá del pago que efectúe el asegurado en virtud de sentencia firme dictada contra él con motivo del suceso, ni dependerá de dicha sentencia. 26 LPRA sec. 2001.

Por consiguiente, enfatizo que el Código de Seguros de Puerto Rico generó una responsabilidad del asegurador hacia la persona perjudicada en aquellas situaciones en las que ocurre una pérdida cubierta por la póliza de seguro, que no depende de alguna sentencia dictada por el Tribunal contra el asegurado o de algún pago de sentencia efectuado por este. *SLG Albert-García v. Integrand Asrn., supra,* pág. 392; *Trigo v. Travelers Ins. Co.,* 91 DPR 868,

874-875 (1965). De esta manera, la acción directa estará sujeta a los términos y limitaciones de la póliza, "lo que implica que el acto debe estar cubierto por la póliza", y que la responsabilidad del asegurador no será mayor de la pactada ni surgirá en la ausencia de un acto u omisión culposa o negligente. *SLG Albert-García v. Integrand Asrn., supra,* pág. 392-394. Al final, la política pública que se procura es brindar a las personas que sufren un daño el derecho legítimo a recibir un resarcimiento. Íd, pág. 392 y 394.

En sentido similar, contrario a lo resuelto, si bien el Art. 20.050 del Código de Seguros de Puerto Rico, 26 LPRA sec. 2004, establece que la obtención de un seguro de responsabilidad por parte de los municipios no constituye una renuncia de inmunidad municipal por los actos u omisiones en las que medie culpa o negligencia, el estatuto provee una excepción, la cual permite la indemnización hasta el grado provisto por la póliza para un suceso en particular. Íd. Específicamente, dispone:

**Artículo 20.050. Seguro de Responsabilidad Sobre Entidades Públicas**

(1) La obtención de un seguro de responsabilidad por el Estado Libre Asociado de Puerto Rico, sus dependencias o entidades, y por los **municipios** y otras subdivisiones políticas, **no constituirá ni se estimará que constituye una renuncia de inmunidad gubernamental,** si la hubiere, en la responsabilidad por actos u omisiones en que hubiere mediado culpa o negligencia por agentes y empleados públicos, **<u>excepto hasta el grado de la indemnización cobrable real</u>**

**y efectivamente provista por dicho seguro en cuanto a un suceso en particular**. Sin embargo, no se considerará que existe tal renuncia de inmunidad en cuanto a **ninguna reclamación o demanda contra tal entidad pública**, a menos que dicha entidad renuncie expresamente a la inmunidad.

(2) **Todas dichas pólizas de seguro deberán disponer que el asegurador no podrá aducir la defensa de inmunidad gubernamental en ninguna acción incoada contra el asegurador con arreglo a dicha póliza o en virtud de la misma.**

(3) **El asegurador no tendrá ningún derecho de subrogación contra ninguna entidad gubernamental**, ni sus agentes o empleados, asegurados con arreglo a dicha póliza, en virtud de pérdida pagada por el asegurador de acuerdo a la misma. Sin embargo, se dispone que, de existir otro seguro de responsabilidad cobrable provisto por otro asegurador, el asegurador podrá subrogarse contra este otro asegurador. Íd. (Negrillas y subrayado suplidos).

Obsérvese, además, que del Art. 20.050 queda meridianamente claro que la adquisición de una póliza por parte de las entidades públicas no constituye una renuncia a la defensa de inmunidad gubernamental, sino que se limitará hasta el alcance de la cobertura del seguro. En otras palabras, la renuncia estará condicionada solo si el riesgo en cuestión está cubierto por el seguro y sujeta a los límites de este. Véanse *Williams v. New Mexico State Highway Commission,* 82 N.M. 550, 1971-NMCA-050, 484 P.2d 770 (Ct. App. 1971); *Lively v. City of Blackfoot*, 91 Idaho 80, 416 P.2d 27 (1966).

Más importante aún, cuando el estatuto requiere que la renuncia a la inmunidad sea expresa, el único resultado posible –de ello ocurrir y en armonía con el Art. 20.030– sería que el tercero perjudicado pueda presentar una demanda o reclamación en contra del municipio o la entidad pública, por evidentemente haber renunciado a su inmunidad. Nada en el estatuto sugiere o propone que se altera o elimina la acción directa en contra del asegurador que, por disposición del Art. 20.030 del Código de Seguros de Puerto Rico, *supra*, se reconoce en nuestra jurisdicción. Tampoco se podría interpretar que implícitamente se les extienda a los aseguradores la defensa personal de inmunidad de las entidades públicas.

De esta forma, el resultado mayoritario socava la letra clara del Art. 20.050 del mismo cuerpo normativo, que les impide a las aseguradoras levantar la defensa de inmunidad gubernamental en las acciones directas en contra del ente asegurador. Al respecto, la discusión jurídica evidencia que:

> There are two discrete circumstances that may raise the question of whether a defense which is personal to the insured may inure to the benefit of the insurer: those in which the injured third party is bringing a direct action and those in which the action is brought by the insured. In the latter circumstance, where the terms of the contract obligate the insurer to pay on behalf of its insured only those losses which its insured is legally obligated to pay, the insurer cannot be compelled to pay damages that its insured would not have to pay due to a personal defense. If the

insurer is sued directly by the injured party, however, **the rules depend on the nature and precise wording of the statute** or policy provision **authorizing the direct action**. 7A *Couch on Ins.*, Sec. 103:17. Effect of insured's immunity from suit.

Visto lo anterior, no debimos llegar a resultados excluyentes y absolutistas que exoneraran a las compañías aseguradoras de todo tipo de responsabilidad en casos como el de autos, sino, al contrario, correspondía que interpretáramos y aplicáramos los Artículos 20.010, 20.030 y 20.050 del Código de Seguros de Puerto Rico, *supra*, a partir de la intención protectora del Código de Seguros de Puerto Rico.

Finalmente, reitero que la adopción de un precedente incorrecto, como lo fue *González Meléndez v. Mun. San Juan et al.*, mediante una interpretación expansiva, erosionó la responsabilidad de los municipios al reconocerle, jurisprudencialmente, una inmunidad absoluta en pleitos como el de autos. Esto a pesar de que estuviera en controversia el que estos ayuntamientos fuesen responsables del cuidado, control y mantenimiento de las aceras y carreteras estatales e incurrieran en negligencia en el desempeño de sus obligaciones, ocasionando daños a terceros. Este desacertado precedente sentó las bases para el resultado erróneo al que hoy se arriba: hacer prácticamente extensiva esta inmunidad a su aseguradora, en contravención a la política pública en protección de terceros afectados y a los estatutos aplicables en materia

de seguros. Por el contrario, sostengo que no debimos extenderle un alcance tan abarcador, ni favorecer interpretaciones cuya consecuencia material es relevar a la aseguradora de su **responsabilidad estatutaria** en perjuicio de terceras personas afectadas. Por todo ello, **respetuosamente disiento**.


                              Luis F. Estrella Martínez
                                   Juez Asociado